UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY DAIGNEAULT,<br>    Plaintiff | :<br>: |
| | :    CIVIL ACTION NO. |
| v. | :    3-07-cv-122 (JCH) |
| | : |
| STATE OF CONNECTICUT<br>JUDICIAL BRANCH, et. al.,<br>    Defendant | :<br>:    MARCH 19, 2007<br>: |

**RULING ON DEFENDANTS' MOTION TO DISMISS AND
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [Doc. No. 9 & 15]**

**I.     INTRODUCTION**

The plaintiff, Larry Daigneault ("Daigneault"), filed this action, pro se, on January 23, 2007, against the defendants, State of Connecticut Judicial Branch "and the various Judges and Justices of the CT Superior, Appellate, and Supreme Courts, Defendants in their official capacity, known and unknown, who in DBD-CV-0334518S and related appeals and petitions ignored OWBPA prohibitions as to subject matter jurisdiction" (the "defendants," collectively). See Amended Complaint [Doc. No. 6]. Arguing that Daigneualt's claims are barred by the Eleventh Amendment, the Rooker-Feldman doctrine, Younger abstention, and the doctrine of judicial immunity, the defendants move to dismiss the Amended Complaint.

**II.    STANDARD OF REVIEW**

Under Fed. R. Civ. P 12(b)(1), the court dismisses a complaint for lack of subject matter jurisdiction when it lacks statutory or constitutional authority to adjudicate the suit. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In assessing a

1

motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). However, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir.1993). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir.2000).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). A Rule 12(b)(6) motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). However, "bald assertions and conclusions of law will

2

not suffice" to meet this pleading standard. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

## III. FACTS[1]

In his Amended Complaint, Daigneault alleges that this suit arises out "of a state whistleblower suit for the alleged harassment and wrongful termination of Plaintiff and thus criminal removal of a public official from his place of trust at the FAA licensed repair facility." Am. Compl. at 9. He claims that on October 29, 2003, his attorney filed a withdrawal of his state court action based upon the parties' attempt at mediation. Subsequently, Daigneault filed a Motion to Re-open in November 2003, pro se, which was denied on March 15, 2004. He then filed a Motion to Reconsider, which motion was also denied, and then a Motion to Reargue, which was also denied. Daigneault next filed a Motion for Contempt, and the state court defendants then filed a Motion to Dismiss Daigneault's Motion for Contempt, based on a lack of subject matter jurisdiction, which the trial court granted. Daigneault then appealed from the judgment of the trial court, which appeal the Appellate Court dismissed. See Daigneault v. Consolidated Controls Corp., 89 Conn. App. 712 (Conn. App. Ct. 2005). After further motions and counter-motions in the state court action, Daigneault's Amended Complaint concludes that "the CT Courts have aided and abetted criminal acts with 'conscious avoidance' thus making the various state judge and justices condoning such conduct, willing felons. . . ." Am. Compl. at 16. Daigneault is currently seeking

---

[1]The court takes the facts alleged by the Amended Complaint [Doc. No. 6] as true for purposes of this motion and draws all reasonable inferences in the plaintiff's favor.

equitable relief from the state rulings, costs and fees, lost wages, and compensatory and punitive damages.

## IV. DISCUSSION

### A. Eleventh Amendment Bars Claims Against Judicial Branch

The Judicial Branch is a department of the State of Connecticut. See Conn. Gen. Stat. § 51-1a. The Supreme Court has long held that the Eleventh Amendment bars suits against a non-consenting state in federal court brought by a state's own citizens or by citizens of another state. Edelman v. Jordan, 415 U.S. 651, 663-64 (1974). A claim against a state agency is essentially a claim against the state, implicating the Eleventh Amendment, because the state is the "real, substantial party in interest." Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 101 (1984). While there are limited exceptions to this rule, it is well-established that "any claim [against the state] for retroactive monetary relief, under any name, is barred." Kostok v. Thomas, 105 F.3d 65, 69 (2d Cir. 1997). Furthermore, "the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity." Cory v. White, 457 U.S. 85, 91 (1982).

The plaintiff has not provided, nor can the court find, any substantive grounds permitted by the Eleventh Amendment to proceed on his claims against the Judicial Branch. Accordingly, the court grants the motion to dismiss all claims against the Judicial Branch.

### B. Rooker-Feldman Doctrine Bars Claims Against State Court Decisions

While it is unclear what the statutory or common law bases for Daigneault's

4

various claims are, it is clear that all of his claims arise out of, and are inextricably intertwined with, decisions by the Connecticut Superior and Appellate Courts. All such claims are barred by the Rooker-Feldman doctrine.

"The Rooker-Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998). "Rooker-Feldman applies not only to decisions of the highest state courts, but also to decisions of lower state courts." Ashton v. Cafero, 920 F. Supp. 35, 37 (D. Conn. 1996). The doctrine "holds that, among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments." Johnson v. Smithsonian Inst., 189 F.3d 180, 185 (2d Cir. 1999) (citations omitted). Federal courts are barred "from considering claims that are 'inextricably intertwined' with a prior state court determination." Id. at 185 (citations omitted).

The Supreme Court's recent narrowing of the scope of the Rooker-Feldman doctrine does not affect this conclusion in this case. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("The Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejecting of those judgments"). Daigneault cannot "call[] upon the District Court to overturn an injurious state-court judgment." Id. at 291-92.

Here, the plaintiff, having lost in state court, is essentially a "state-court loser[] complaining of injuries caused by state-court judgments . . . ." Id. at 284. To have this

5

court render relief "from all state rulings," see Am. Compl. at 18, would embroil it in evaluating the correctness of actions taken by the Connecticut Superior and Appellate Courts in Daigneault's state court action. This is precisely what the Rooker-Feldman doctrine forbids federal courts from doing. See Hachamovitch, 159 F.3d at 694; Gentner v. Shulman, 55 F.3d 87, 88-89 (2d Cir. 1995).

### C. Judicial Immunity Bars Claims Against Judges

To the extent Daigneault has asserted any claims against Connecticut judges in their individual capacity, these claims are barred by judicial immunity. It is clearly established that "'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" Stump v. Sparkman, 435 U.S. 349, 356 (1978) (citations omitted). This judicial immunity even applies when judges are accused of acting pursuant to a conspiracy. See Dennis v. Sparks, 449 U.S. 24, 27 (1980) (claim that judge conspired to corrupt office was dismissed because of absolute immunity). In this case, therefore, any claims against the Connecticut judges in their individual capacity are barred by judicial immunity.

### V. CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' Motion to Dismiss [**Doc. No. 9**]. Based on this Ruling dismissing Daigneault's case in its entirety, the court DENIES the plaintiff's Motion for Judgment on the Pleadings [**Doc. No. 15**] as moot. The clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 19th day of March, 2007.


       /s/ Janet C. Hall
Janet C. Hall
United States District Judge